COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN,
SEPTEMBER TERM 1851, AT NORTHAMPTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. RICHARD FLETCHER,
Hon. GEORGE T. BIGELOW,
} Justices

[Some of the cases from the county of Hampden, from page 539 to page 561, were argued at the sittings in Boston, in January, 1852.]

COMMONWEALTH *vs.* DAVID KELLOGG & another.

An indictment for a conspiracy alleged that the defendants, on the 5th of Janu ary, 1850, conspired to defraud the H. insurance company, by removing and secreting the goods belonging to one of the defendants, and insured by said company, and then pretending that they had been destroyed by fire. The evi dence was, that the policy was issued on the 2d of January, 1850; that the goods were removed on the 5th; that the shop from which they were removed was destroyed by fire on the 7th; and that the defendants had no knowledge of any insurance of the goods by the H. insurance company until after the fire. It was held, that this evidence did not support the allegation in the indictment.

This was an indictment against the defendants for a con spiracy to injure and defraud the Howard Insurance Company, a corporation duly established by law in Hartford, Connecti-

40 *

Commonwealth *v.* Kellogg & another.

out, and doing business, among other places, at Lowell, in this commonwealth, by certain means set forth in the indictment.

The indictment alleged, that Kellogg, who was a merchant tailor in Northampton, on the 5th of January, 1850, conspired with the other defendant to remove Kellogg's stock of goods from his shop, and to secrete and conceal them; said goods being then insured against loss or damage by fire, by the Hamilton Fire Insurance Company, doing business at Lowell, by a policy dated the 3d of January, 1850, in the amount of $2,000, payable, in case of loss, to one Freeman; and to pretend to the insurance company, that the same had been destroyed by fire, and thereby to injure and defraud the insurance company; that, in pursuance of said conspiracy, the defendants, on the 5th of January, 1850, removed the goods insured from Kellogg's shop, and secreted and concealed the same; that, on the 7th of January, 1850, Kellogg's shop was destroyed by fire; that, on the 9th, the defendants gave notice of the pretended loss of the goods to the insurance company, and complied with all the conditions required by the policy to be observed in order to obtain payment of the sum thereby insured; and that the insurance company were thus induced to pay, and did pay, such pretended loss, amounting to $1,500, when, in fact, none of the goods insured were in the shop when the fire occurred, and none, in fact, were destroyed.

At the trial, which was in the court of common pleas, before *Hoar*, J., it appeared in evidence, that the only application for insurance to the Howard Insurance Company, signed by Kellogg in person, bore date of the first of January, 1850, and was made at the office of Gillett, the agent of the company, in Hartford, to be forwarded to the Mechanics' Company, at Worcester, in this state, for which Gillett was also an agent; that this application was forwarded and rejected; that afterwards a new application was made out, at Gillett's office, to the Howard Insurance Company, but was not signed by Kellogg personally, but purported to be signed in his name, by one Cogeshall, a clerk in Gillett's office; that this application bore date of the 3d of January, 1850,

and was forwarded to Lowell, and a policy returned and delivered to Freeman, for whose benefit the insurance was effected, and that it was by him retained; and the loss was afterwards paid to him, a written notice and statement of his loss, under oath, having been made out and signed by Kellogg, at Freeman's request, in which Kellogg claimed to be the party insured.

It was argued for the defendants, upon this and other evidence, that the defendants could not have known, as early as the evening or night of the 5th of January, (when it was contended the goods were removed from Kellogg's shop,) or by one o'clock, on the morning of the 7th of January, when the shop was burned, that Kellogg had been insured by the Howard Company, and that the defendants could, not, therefore, have intended to defraud that company; and there was evidence tending to show, that Kellogg did not, in fact, know that he was insured by the Howard Insurance Company till after the fire.

But the judge ruled, that if Kellogg applied to Gillett, as an insurance agent, to obtain an insurance payable in case of loss to Freeman, the mortgagee of the goods, without any especial desire to be insured in any particular company; and, supposing that he was insured in the Worcester company, although really insured in another, afterwards conspired with Abbott to defraud the insurers of the goods in the manner alleged in the indictment; and having no intent to defraud any particular company, except so far as they were, and by reason of their being, insurers of those goods; and upon learning that the Howard Insurance Company were, in fact, the insurers, continued to act in execution of the conspiracy; the charge in the indictment might be supported. The judge also ruled, that a general intent to defraud, although directed by circumstances to a party not originally known or contemplated by the conspirators, might be set forth, without a variance, as a conspiracy to defraud the party actually defrauded under such circumstances. The defendants, being convicted, alleged exceptions.

*C. Delano,* for the defendants

*Clifford,* attorney general, for the commonwealth, referred to Archb. Crim. Pl. (5th Amer. ed.) 675; *The King* v. *Gill,* 2 B. & Ald. 204; *The Queen* v. *King,* 7 Ad. & El. N. R. 782.

DEWEY, J. The object of the conspiracy must be shown by the proof to correspond with that charged in the indictment. It becomes a material allegation when it points to a particular individual or corporate body, naming them as the subjects of the conspiracy, and a variance between the allegation and the proof in such case is fatal.

In indictments for larceny, the rule has been strictly applied as t: the averment of the ownership of the goods, and a mistake in this respect operates as an acquittal of the prisoner. So also in indictments for burglary, if it be alleged that the entry was with intent to commit one species of felony, and the fact appears upon the evidence to have been an entry for another and different purpose, the charge in the indictment is not sustained. 2 East P. C. 514. The like rule is stated in books of authority, as to a charge of conspiracy; where it has been held that, in an indictment for a conspiracy, the object of the conspiracy must be proved as alleged in the indictment. Roscoe Crim. Ev. 326; *Rex* v. *Pollman,* 2 Campb. 229, 233. The case of *Commonwealth* v. *Manley,* 12 Pick. 173, is to this point. The indictment charged a conspiracy to defraud one Relief Harris, a married woman, of a certain promissory note of hand, and it was held that if the note was the property of the husband, and not of the wife, the variance would be fatal.

But the case more directly in point is that of *Commonwealth* v. *Harley,* 7 Met. 506, which seems to embrace the present question. The allegation there was of a conspiracy to cheat and defraud a particular individual named; and it was contended that a general intent to defraud, if it operated, when carried into effect, to defraud a particular individual, might well authorize the charge of a conspiracy to defraud such person, though that individual was not in the contemplation of the parties at the time of entering into the conspiracy, and it did not appear that the defendants had agreed to perpetrate the fraud on him particularly. But it was held, that proof

that the defendant conspired to defraud the public generally, or any individual whom they might meet and be able to defraud, would not sustain the indictment charging, as it did, a conspiracy to defraud the individual who was named in the indictment.

Although it is generally true, that the party is to be held to have intended the legitimate effect of his acts, and, in ordinary cases of indictments for crimes, it would be quite sufficient to allege and prove the acts to have been committed against the person or property of the individual actually injured thereby, yet this principle does not fully apply to cases like the present. In an indictment for a conspiracy, the criminal offence is the act of conspiring together to do some criminal act, or to effect some object, not in itself criminal, by criminal means. The offence may be committed before the commission of any overt acts. The gist of the offence being the conspiracy preceding all such overt acts, the purpose of the conspiracy should be truly stated. If it was a general purpose to defraud, and not aimed at any particular individual; if the person, who, upon the commission of the overt acts, would be defrauded, was unknown; then it would be improper to apply to the original conspiracy the purpose to defraud the party who was eventually defrauded, but not within any previous purpose or design of the conspirators, or in reference to whom the conspiracy itself had any application.

The case of *Commonwealth* v. *Harley* seems decisive of the present case. To apply the principle here, it becomes necessary to look at the case as stated in the bill of exceptions. The conspiracy charged, is an agreement to cheat and defraud the Howard Fire Insurance Company of their money. The evidence tended to prove that the overt acts were commenced as early as the 5th of January, and that on the night of that day certain goods were removed from the store of Kellogg, and that a fire occurred on the 7th of January, destroying the store in which said goods had been previous to the 5th of January, and the evidence tended to show, that the defendants had no knowledge of any insurance upon the goods by the Howard Insurance Company, until after the fire, and of course

after the removal and secreting of the goods. How, then, can it be said, that the defendants, on the 5th of January, conspired to cheat and defraud the Howard Insurance Company; or that, in the removal of the goods on the 5th of January, they had any such concerted purpose? The removal of the goods, and the secreting of them, were acts done by the defendants before they had any knowledge of the existence of the policy of insurance made by the Howard Insurance Company. All these acts, prior to and including the 7th of January, cannot have been the result of a conspiracy to defraud the Howard Fire Insurance Company. It was only after the existence of the policy of insurance, issued by that company, became known to the defendants, that they could have had the particular purpose to defraud that company.

A charge of conspiracy, in the form of this indictment, that is, alleging the original purpose to have been to defraud the Howard Fire Insurance Company, cannot be supported by proving a conspiracy with a general intent to defraud, and then proving the further fact, that after the acts of removing the goods and concealing the same, and after a fire had destroyed the store, the defendant Kellogg, upon hearing that there was an insurance by the Howard Fire Insurance Company, falsely represented that the goods had been destroyed by fire.     *Verdict set aside, and new trial ordered.*